UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    NOT FOR PUBLICATION
――――――――――――――――――――――――――――――――――――― x

GEORGE PAPPANIKOLAOU, et al.,

         Plaintiffs,

                                                MEMORANDUM AND ORDER

    - against -

NEW YORK CITY, et al.,                          Civil Action No.
                                                CV-01-865 (DGT)

         Defendants.

――――――――――――――――――――――――――――――――――――― x


TRAGER, J.


## Background

     On January 29, 1999, plaintiff George Pappanikolaou

("Pappanikolaou")[1] was arrested for allegedly forcing his way

inside the home of Reeva Grammatikopoulos, a sixteen-year-old

tenant in a building that he owns.  The girl alleged that

Pappanikolaou screamed at her, grabbed her arm, and caused her to

cut her finger on a glass panel when she attempted to pull free

from him.  As a result, following a bench trial on November 9,

1999, Pappanikolaou was found guilty of the following three

misdemeanors: (1) Menacing in the Third Degree (Penal Law

§ 120.15); (2) Criminal Trespass in the Second Degree (Penal Law

――――――――――――――――――――

         [1] For the sake of clarity, the term "plaintiff" will be used
to refer to Mr. Pappanikolaou, and the term "plaintiffs" will be
used to refer to both Mr. and Mrs. Pappanikolaou.

                                1

§ 140.15) and (3) Harassment in the Second Degree (Penal Law § 240.26-1). Following his conviction, on January 5, 2000, Pappanikolaou was sentenced to fifty two days of incarceration, to be served on weekends, and three years of probation.

### (1)

### Original Complaint

On approximately November 17, 1999, Pappanikolaou and his wife Sofia filed a <u>pro se</u> civil rights action against New York State Justice Charles Posner, Kings County District Attorney Charles Hynes and Assistant District Attorneys Courtney Nadler and Ileane Spinner. However, plaintiffs moved to withdraw their complaint on approximately January 24, 2000, and the action was dismissed without prejudice.

### (2)

### First Amended Complaint

On February 14, 2001, plaintiffs filed an amended complaint and supplemental summons, naming: (1) the New York City ("NYC") Department of Corrections; (2) the NYC Rent Guidelines Board; (3) the NYC Police Department; (4) the Criminal Court of Kings County; (5) the NYC Office for People with Disabilities; (6) the NYC Office of the Criminal Justice Coordinator and (7) the District Attorney's Office, Kings County (collectively, "the City defendants"); as well as (8) the New York State ("NYS")

Department of Correctional Services and (9) NYS Division of Housing and Community Renewal ("DHCR") (collectively, "the State defendants") as defendants.

In the amended complaint plaintiffs alleged that: (1) Justice Posner and the Assistant District Attorneys conspired to convict him by tampering with the trial and the evidence presented at trial; (2) plaintiff was abused by the NYC Police Department and the NYC Department of Corrections and (3) both plaintiffs are being discriminated against by DHCR through its administration of the Rent Control and Stabilization Laws, which forced them to "subsidize Normal People" and which discriminate between "Normal Tenant Owners" and "Disabled Tenant Owners." Plaintiffs also alleged various other deprivations that were suffered at the hands of both City and State agencies following plaintiff's arrest, prosecution and conviction in Kings County Criminal Court. Mostly, however, the thirty-one-page complaint was a lengthy narrative which rambled about conspiracy theories concerning plaintiff's allegedly false arrest, prosecution and conviction.

On May 14, 2001 the State defendants moved to dismiss the first amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). The State defendants argued that plaintiffs' claims were barred by the

Eleventh Amendment to the United States Constitution, and that
plaintiffs failed to state a claim under the Americans with
Disabilities Act ("ADA").

Similarly, on May 16, 2001, the City defendants argued that
plaintiffs' amended complaint should be dismissed for failure to
comply with the pleading requirements of Rules 8 and 10 of the
FRCP.  Additionally, the City defendants argued that the amended
complaint should be dismissed pursuant to FRCP 12(b)(6).

**(3)**

### Dismissal by Judge Weinstein

On June 29, 2001, both the City and State defendants'
motions to dismiss were granted by the Honorable Jack B.
Weinstein.  Judge Weinstein found that: (1) the case lacks
sufficient merit to warrant appointing an attorney for
plaintiffs; (2) plaintiff cannot collaterally attack his state
court conviction by bringing an action against various state
officials; (3) there is no indication sufficient for
constitutional or federal statutory claims that plaintiff was
sufficiently denied, deliberately and maliciously, medical
treatment; (4) the defendant judge has absolute immunity in such
cases as this and (5) Mrs. Pappanikolaou has no claim because she
was not directly involved in the alleged wrongful actions against
her husband.

## Second Circuit Appeal

Plaintiffs appealed, and on February 6, 2003, the United States Court of Appeals for the Second Circuit reversed the dismissal of plaintiff's medical claims. The Second Circuit remanded the case to the district court with instructions to: "(a) review whether the New York City defendants were deliberately indifferent to the Appellant's serious medical needs; (b) permit Appellant to amend his complaint to name individual defendants with respect to his Americans With Disabilities Act claims; and (c) rule in the first instance on the ADA claims." February 6, 2003 Mandate of the United States Court of Appeals for the Second Circuit. The Court dismissed the remainder of plaintiff's appeal as frivolous. In other words, the Second Circuit remanded this action for consideration of plaintiff's claims against only the NYC defendants with respect to Mr. Pappanikolaou's medical needs and his claims under the ADA. All other claims were dismissed and can no longer be brought by plaintiffs. "These dismissed claims include claims concerning the legality of [plaintiff's] arrest, prosecution and conviction; claims against the New York State Department of Corrections; claims by Sofia Pappanikolaou; claims against the New York State agencies, which are protected from suit under the

Eleventh Amendment; and claims, if any, challenging the constitutionality of the Rent Control Laws."  March 9, 2004 Order of Magistrate Judge Marilyn Dolan Go ("March 9, 2004 Order") at 2.

After the case was remanded back to the district court, Judge Weinstein recused himself from the case.  Plaintiffs appeared before Magistrate Judge Go to discuss another proposed amended complaint, and Judge Go informed plaintiff that he could not challenge his state court conviction and instructed plaintiff concerning the claims that he needed to set forth in an amended complaint.

**(5)**

### Second Amended Complaint

On January 7, 2004, plaintiffs filed their second amended complaint as a result of a conference held with Judge Go on October 31, 2003.  Plaintiff's second amended complaint was 118 pages long, and once again featured a lengthy narrative that went into great detail concerning plaintiff's arrest, incarceration and prosecution, instead of giving a "short and plain statement" of plaintiff's allegations.  In addition, attached to the second amended complaint were a slew of exhibits, including a police report from plaintiff's arrest and vulgar letters written by Reeva Grammatikopoulos, the girl plaintiff was convicted of

harassing.  After reviewing the second amended complaint, Judge Go explained to plaintiff that he must clearly state what his claims are against the defendants and that he may not assert any claims which implicate his state court conviction.

## (6)

### Third Amended Complaint

On February 26, 2004, plaintiff filed still another amended complaint.  Plaintiff's third attempt at an amended complaint resulted in a fifty-nine-page, single-spaced document that was yet again filled with the same rambling and incomprehensible allegations that were present in the first two amended complaints.  A fifth status conference was held to discuss the newly amended complaint before Judge Go on March 3, 2004. Plaintiff was told that his complaint still contained claims that were previously dismissed by the Second Circuit and that he would, once again, be allowed to amend to comply with the order of the Second Circuit.

By order dated March 9, 2004, Judge Go summarized comments and rulings made at all prior conferences, and furnished plaintiff with explicit instructions concerning how he should properly amend his complaint.  See March 9, 2004 Order at 1. Judge Go instructed plaintiff to use a "short and plain statement" to describe each claim asserted, and that he should

only give "such information as may be necessary to give notice of what conduct or condition he claims violated his rights." Id. at 4. With respect to his ADA claim, Judge Go directed him to state what physical conditions he has that are disabilities protected under the ADA and to describe the conduct he claims violated his rights, including the people involved, the date and how his ADA rights were violated. With respect to his claims regarding treatment of his medical needs, Judge Go directed plaintiff to identify where he was incarcerated; what care he needed that was not provided for him, or what care he did receive that was improper; and the people who gave improper care or failed to give him appropriate medical care, or at least the date when such events occurred. Judge Go further ordered that if plaintiffs do not have specific information, they should at least provide whatever information they do have that may help the defendants to ascertain the necessary information. Finally, Judge Go ordered that plaintiffs not include in the amended complaint any allegations related to the prior hearings in this case or claims challenging the legality of plaintiff's arrest, prosecution or conviction.

**(7)**

## Fourth Amended Complaint

On August 3, 2004, plaintiffs filed their "Fourth Amended

Complaint," a forty-three-page narrative document, which names numerous new defendants, including attorneys for both the State and City defendants, and continues to make allegations concerning claims that were already dismissed by the Second Circuit, such as plaintiff's allegedly wrongful arrest, prosecution and conviction in state court.  The more pertinent allegations contained in the fourth amended complaint, to the extent they can be deciphered, are that Pappanikolaou's constitutional rights under 42 U.S.C. § 1983 and the ADA, 42 U.S.C. § 12132 and § 12182, were violated by various defendants employed by either the City or the State of New York. First, Pappanikolaou appears to claim that he was sentenced to "cruel and unusual punishment," when a Brooklyn Criminal Court Judge (Justice Posner) sentenced him to six months of weekend incarceration at Riker's Island, which plaintiff claims he could only go to in an ambulance as a result of being disabled, and three years of once-a-week probation for which plaintiff would have to make a physical appearance.  Fourth Am. Compl. at 12.  Secondly, Pappanikolaou claims that his constitutional rights were violated when he was incarcerated for two weeks at the Brooklyn House of Detention, where he was: (1) strip searched; (2) had his medicine confiscated; (3) derided when he asked for medical aid; (4) placed in a cell with no "towels, bed sheets, pillow, pillow cases, [and] blankets;" and

(5) forced to stand for many hours and climb stairs. As a result, he claims that he suffered three heart attacks in the first six days of his incarceration, had a fourth heart attack later on, and spent ten days out of his two-week incarceration in two different hospitals. Id. Third, he claims that he was denied access to the state court, in violation of the ADA. See id. at 16-17.

By letter dated August 5, 2004, Constantine Speres ("Speres"), counsel for the State defendants, requested an order from Judge Go to dismiss plaintiff's complaint for failure to comply with Fed. R. Civ. P. 8. In another letter dated September 15, 2004, Speres requested, in the alternative, to strike the names of the newly added defendants.[2] Similarly, Assistant Corporation Counsel Caryn Rosencrantz, counsel for the City of New York, requested in a letter dated August 6, 2004 that the court strike her name from the caption of the complaint. By order dated September 24, 2004, Magistrate Judge Go struck the

---

[2] These defendants included: (1) Mr. Speres; (2) Assistant Corporation Counsel Caryn Rosencrantz; (3) Governor George E. Pataki; (4) Assemblyman Sheldon Silver; (5) Senator Joseph Bruno; (6) Attorney General Eliot Spitzer; (7) Chief Judge Judith Kaye; (8) Judge Eugene L. Nardelli; (9) Commissioner Judith Calogero of the New York State Division of Housing and Community; (10) Commissioner Glenn S. Goord of the New York State Department of Correctional Services; (11) Justice Francois River and (12) the NYS Commission on Judicial Conduct.

names of all the newly added parties from the complaint, finding that plaintiffs had not made any allegations in the complaint concerning these new parties.

On November 22, 2004, the City defendants moved to dismiss the Fourth Amended Complaint. The City defendants claim that plaintiffs' fourth amended complaint is a violation of Fed. R. Civ. P. 41(b), for failure to comply with the February 6, 2003 Order of the Second Circuit Court of Appeals and for failure to comply with Judge Go's March 9, 2004 Order and a violation of Fed. R. Civ. P. 8 and 10 for failure to provide a clear and concise statement of claims. They further assert that any further leave to amend would be futile, and therefore should be denied.

Similarly, on November 22, 2004, the State defendants also moved to dismiss the fourth amended complaint.[3] The State defendants claim that both the February 6, 2003 dismissal by the Second Circuit and the March 9, 2004 Order by Judge Go bar plaintiff from challenging either his criminal conviction or his claim under the ADA against the DHCR, and that plaintiff fails to

---

[3] Plaintiff, in response to the State and City defendants' motion to dismiss filed a 229-page opposition. Plaintiff's opposition, much like his prior four amended complaints, is a lengthy narrative, which rambles on about plaintiff's state court conviction, and fails to clarify the nonsensical allegations in his fourth amended complaint.

state a valid claim under Title II of the ADA, since he was never excluded from the courthouse.

## Discussion

Plaintiff George Pappanikolaou claims in his fourth amended complaint that his constitutional rights under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 and § 12182, were violated. These claims appear to include allegations concerning: (1) his arrest, prosecution and conviction; (2) failure to provide him with proper medical treatment; (3) failure to provide proper "amenities" and accommodations for his disability in violation of the ADA; (4) deprivation of access to the state court in violation of the ADA; (5) losses suffered by his wife as a result of his treatment while incarcerated and (6) the discriminatory nature of the Rent Control and Stabilization Laws. The Second Circuit, in its February 6, 2003 mandate, has already dismissed as frivolous all claims other than plaintiff's § 1983 and ADA claims, and, therefore, any allegations challenging plaintiff's prior conviction, seeking restitution for the pain suffered by plaintiff's wife and challenging the constitutionality of the Rent Control and Stabilization Laws will not be discussed because they are moot. In addition, any claims that plaintiff has

against the State of New York, including his claim of deprivation
of access to the state court, will not be discussed, as the
Second Circuit has already dismissed the State of New York as
defendants in this action.


(1)

**Violation of Rule 41(b): Failure to Comply with Court Order**

The NYC defendants have moved to dismiss plaintiff's
complaint pursuant to Fed. R. Civ. P. 41(b) for failure to comply
with a court order.  Rule 41(b) states: "For failure of the
plaintiff to . . . comply with . . . any order of court, a
defendant may move for a dismissal of an action or of any claim
against the defendant."  However, if this rule is read literally,
it would allow for the dismissal of the most trivial
noncompliance with court orders.  <u>See</u> 9 C. Wright & A. Miller,
<u>Federal Practice and Procedure</u> § 2369 (2005).  The Second Circuit
has held that a district court may not dismiss a plaintiff's
action for failure to comply with a court order when that court
order required plaintiff to submit a complaint that exceeded the
pleading requirements of Rule 8.  <u>Wynder v. McMahon</u>, 360 F.3d 73,
78 (2d Cir. 2004).  Therefore, in order to determine whether a
complaint should be dismissed for failure to comply with a court
order that instructs a plaintiff on Rule 8 pleading requirements,

13

it must first be determined whether the court order exceeds the pleading requirements of Rule 8. Only if the court order enforced a pleading requirement no more stringent than Rule 8 can a plaintiff's violation of the court order be potentially deserving of dismissal. "Dismissal is a harsh remedy to be utilized only in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citing Alvarez v. Simmons Market Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988)). Therefore, five factors must be analyzed before determining whether dismissal under Rule 41(b) for failure to comply with a court order is warranted: (1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delays; (4) balancing the need to alleviate court calendar congestion and protecting a party's right to due process and a fair chance to be heard and (5) whether the judge has adequately assessed the efficacy of lesser sanctions. Nita v. Connecticut Dept. of Env. Protection, 16 F.3d 482, 485 (2d Cir. 1994). No one factor is dispositive. Id.

## a.   Rule 8 Pleading Requirements

Rule 8(a) requires that a complaint "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The main function of pleadings under the Federal Rules is to give adverse parties fair notice of the claims asserted, to allow them to answer and prepare for trial. <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988). The rules require that the statement be short, because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." <u>Id</u>. (quoting 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1281, at 365 (1969)). When a complaint violates Rule 8, a district court may, <u>sua sponte</u>, or on defendant's motion, strike repetitive or irrelevant portions or dismiss the complaint completely. <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995). Dismissal, however, is usually "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>Salahuddin</u>, 862 F.2d at 42.

**b.   Court Order**

Judge Go's March 9, 2004 Order, which the NYC defendants accuse plaintiff of violating, presented to plaintiff the requirements of a proper amended complaint.  The order struck down plaintiff's third amended complaint for: (1) being even longer than other post-appeal complaints that were reviewed at prior conferences; (2) repeating claims that had already been dismissed and, most importantly, (3) failing to provide sufficient information with respect to many of the claims that remain in the case, including the identities of the defendants involved, the time and location of the alleged wrong and how plaintiff's rights were violated.  As a result, Judge Go ordered that plaintiff's fourth amended complaint simply use a "short and plain statement" to describe each claim asserted by plaintiff, and that he need not provide every minute detail.  Specifically, the order instructed that with regard to plaintiff's ADA claim, plaintiff only needs to state generally what conditions he claims are disabilities which are protected under the ADA and provide only such information as may be necessary to give notice of what conduct or condition he claims violated his rights.  Regarding treatment of plaintiff's medical needs while in custody, plaintiff was told to identify where he was incarcerated; what care he needed that was not provided, or what improper care he

received; names of the persons who gave improper care or failed to give him appropriate medical care; and, if he is able to so state, the dates involved.

The March 9, 2004 Order was mindful of the Rule 8 requirements of a "short and plain statement." The order did not ask for a detailed complaint that would include evidence, legal theory or an extensive pleading of facts.  Instead, the order simply requested that plaintiff give only as much information as would be necessary to make a proper allegation of his two remaining claims.  The order further instructed plaintiff that if he lacks specific information, he should provide whatever information he has at his disposal to help the defendants ascertain the necessary information.  The order does not impose any potentially onerous requirements, such as having plaintiff identify the first and last names of the persons involved. Instead, it asks for general identifying information, such as the position of the person involved or a physical description of that person. The order is in harmony with the pleading requirements of Rule 8, and plaintiff was required to obey it, or risk dismissal for failure to comply with a court order.

Plaintiff's fourth amended complaint blatantly violates the March 9, 2004 Order.  Plaintiff mentions at the outset of the complaint that he suffers from a "mobility problem, Bad Heart,

Asthma, Migraine, Water Retention, Learning Disability, etc."
Fourteen pages later, hidden within a mass of a verbose
narrative, there is a sentence that may or may not be plaintiff's
ADA claim, where plaintiff states that he was "placed in a cell
with no legally (ADA) required amenities, such as: towels, bed
sheets, pillow, pillow cases, blankets, etc."  Fourth Am. Compl.
at 14.  Even assuming that plaintiff's disabilities are protected
under the ADA, plaintiff failed to show that the defendants'
failure to provide plaintiff with these "amenities" constituted
discrimination against him in violation of the ADA.  In
particular, plaintiff has failed to show how the City defendants'
failure to provide him with "towels, bed sheets, pillow, pillow
cases, [and] blankets" discriminated against him as an individual
who suffers from migraines, a learning disability, water
retention and mobility problems.

It is also difficult to understand plaintiff's § 1983 claim.
Plaintiff alleges that during his incarceration he was refused
medical aid, which caused him to suffer three heart attacks.  The
only person that he is able to identify in connection with his
§ 1983 claim is a policewoman named Santos who, he alleges,
"especially unnecessarily, abused him," and yet, even being able
to identify an individual by name, he fails to provide
information as to what specific actions he claims she took that

violated his rights, which is in direct violation with Judge Go's order. The rest of the complaint, much like the three prior iterations, is filled with claims that have already been dismissed, including plaintiff's state court conviction, which Judge Go specifically ordered plaintiff not to include in his fourth amended complaint.

Instead of following the instruction of Judge Go, plaintiff submitted a new complaint that nonsensically rambles concerning speculations that the only way the state court could have found him guilty of his original crime was if he had the "SUPERNATURAL POWERS" of being in more than one place at a time. Plaintiff even sarcastically proposes the theory of him being able to make himself invisible as the only explanation for him being able to commit the crimes for which he was convicted. Throughout his complaint he blames the original complainant who had him arrested, and describes her, in his unique syntactical style, as "a 16 year female, illiterate, Drug: Addict and Dealer, being part of a dysfunctional family of same {all being Plaintiffs' first floor Tenants: 'From Hell'}." Fourth Am. Compl. at 7. These are but a few examples of plaintiff's inclusion of winding diatribe far removed from the only two claims that he has repeatedly been told are the only allegations that may be discussed in his fourth amended complaint. It is, therefore,

apparent that "[p]laintiff's present complaint conforms with
neither the form nor the spirit of Rule 8," see Prezzi v. Berzak,
57 F.R.D 149, 151 (S.D.N.Y. 1972), and is in direct violation of
Judge Go's order.

**c.  Analysis**

Because Judge Go's order was in harmony with the pleading
requirements of Rule 8, which plaintiff's fourth amended
complaint blatantly violates, it must be determined whether
dismissal would be proper under Rule 41(b).

**i.  Duration of plaintiff's failures**

There are two aspects to the duration of plaintiff's
failures to comply with the court's order: (1) that the failures
were those of the plaintiff; and (2) that these failures were of
significant duration. Jackson v. City of New York, 22 F.3d 71,
75 (2d Cir. 1994). First, the failures are most definitely those
of plaintiff, since he is pro se, and is the only one writing and
filing the amended complaints at issue, as opposed to a plaintiff
who has representation, who may not be at fault for the failures
of his attorney. Secondly, plaintiff's failure to submit a
proper amended complaint has persisted for a significant amount
of time. Since this case was remanded by the Second Circuit, the

20

subject of plaintiff's amended complaint has been discussed at five conferences with Judge Go, spanning over a year.  At each conference, Judge Go made it clear to plaintiff that he must follow the order of the Second Circuit, and may not address any claims that have already been dismissed.  For example, on October 31, 2003, Judge Go advised plaintiff not to assert any claim which implicates his conviction.  Despite numerous conferences, plaintiff's second amended complaint failed to follow Judge Go's instructions, forcing plaintiff to submit his third amended complaint on February 26, 2004, which was followed by the final status conference on March 9, 2004.  Despite these numerous conferences, plaintiff's fourth amended complaint, submitted on August 3, 2004, sixteen months after the first status conference with Judge Go was held, continues to be lengthy, fails to properly address the claims that the Second Circuit has deemed proper, and still addresses claims that have been previously dismissed.

### ii.  Notice that further delays might result in dismissal

Plaintiff was never warned that his failure to comply with court orders would result in a dismissal of his entire case.  The NYC defendants argue that plaintiff was put on notice when, at a status conference, Judge Go raised the possibility that

defendants may move for dismissal.  However, plaintiff was never formally warned by either Judge Go or the defendants that his failure to comply with the court's orders could result specifically in a Rule 41(b) dismissal.  "A warning to a _pro_ _se_ litigant must be more specific before it will constitute a warning for the purpose of this analysis." _Lucas_, 84 F.3d at 535.  Plaintiff is _pro_ _se_, and is therefore not likely familiar with the Federal Rules, and he might have made a more faithful effort to comply with them had he been made aware that his entire case could be dismissed for his failure to comply.

### iii. Prejudice by further delay and consideration of lesser sanctions

The NYC defendants fail to point to any evidence that they would be prejudiced by further delay.  In addition, Judge Go has never sanctioned plaintiff, and there is no evidence that she has ever considered a lesser sanction than dismissal.

### iv. Balancing court congestion with plaintiff's due process rights

"There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." _Lucas_, 84 F.3d at 535-6.  Although plaintiff has had many chances to amend his

complaint, he has yet had the chance to proceed with proper claims that he believes are legitimate, and there is no evidence of court congestion overcoming plaintiff's right to have his day in court.

Examination of these factors reveals that a Rule 41(b) dismissal for failure to comply with a court order would be improper, and, therefore, the NYC defendants' motion to dismiss for failure to comply with Judge Go's March 9, 2004 Order is denied.

## (2)

### Violation of Rule 10 and Rule 8 Pleading Requirements

#### a.   Rule 10(b) Pleading Requirements

Defendants have also moved to dismiss plaintiff's complaint for violating Rule 10.  Rule 10(b) provides that "[e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentations of the matters set forth." Fed. R. Civ. P. 10(b).  Plaintiff's fourth amended complaint is devoid of numbered paragraphs, rational punctuation and recognizable syntax, and the allegations contained in it bleed

from one part to the next without any logical structure.[4]  The

complaint blatantly violates Rule 10(b).  However, although Rule

10(b) contains important guidelines for the form of pleadings in

federal court, "harmless violations of the Rule should be excused

so that claims may be resolved on the merits."  Phillips v.

Girdich, No. 04-0347PR, 2005 WL 1154194, at *2 (2d Cir. May 17,

2005).  Therefore, technical pleading irregularities will be

excused as long as these irregularities neither undermine the

purpose of notice pleading nor prejudice the adverse party.  Id.

at *3-4.  Rule 10(b) was designed to "facilitate the clear

presentation of matters set forth," so that allegations can be

easily referenced in subsequent pleadings.  Id. at *4.  In other

words, Rule 10 is simply a guideline to ensure that complaints

are "simple, concise, and direct."  Id. at 4.  Therefore, where

the absence of numbering or succinct paragraphs does not

interfere with a person's ability to understand the claims, the

---

[4] A more egregious example of plaintiff's incoherent fourth
amended complaint is found in the last several (unnumbered)
pages, following page thirty-four: "->1●[1/29/99]●False,
Abusive, Arrests: , Deliberate: Indifference/Negligence , etc.:
by the Policeman McArdle ("McArdle")● Plaintiffs: ➤in Police
Custody: outside their Building⑧ ➤{1:30*-3:38 PM}● 2:30 PM:
McArdle ➤arrives⑨ ➤enters: Complainant ("Comp.") apartment
●2:36 PM (?): "Stoned our of her mind, on Drugs", Comp.'s fake
911 Phone call* ➤"Landlord"... "attacking her" (Ex. B2-3)●
McArdle tries to arrest Plaintiff for same...."  The fourth
amended complaint continues in this fashion for another six and a
half single-spaced pages.

pleading should be accepted.  Even where a violation of Rule
10(b) is not harmless, dismissal is not typically the proper
course of action, but such a defect should be met with a motion
for a more definite statement under Rule 12(e) or a motion to
strike under Rule 12(f) rather than a motion to dismiss.  Id. at
4.  It has already been mentioned that a motion to dismiss is a
harsh punishment for failure to comply with the pleading
requirements of the Federal Rules.  Although plaintiff's
violation of Rule 10(b) greatly interferes with the defendants'
ability to understand plaintiff's claims, dismissal is not
appropriate.  Therefore, the defendants' motion to dismiss for
failure to comply with the pleading requirements of Rule 10(b) is
denied.


**b.  Rule 8(a) Pleading Requirements**

The NYC defendants have also moved to dismiss plaintiff's
complaint simply as a violation of the pleading requirements of
Rule 8, and a complaint which fails to comply with Rule 8 may be
dismissed pursuant to Rule 41(b).  See, e.g., Mangan v.
Weinberger, 848 F.2d 909, 911 (8th Cir. 1988).  A dismissal for
failure to comply with a Federal Rule under Rule 41(b) does not
require the notice and balancing tests necessary for dismissal
for failure to comply with a court order, and lies with the

court's discretion. "Complaints which ramble, which endlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do no comport with [the goals of Rule 8]." <u>Prezzi v. Berzak</u>, 57 F.R.D 149, 151 (S.D.N.Y. 1972) (finding that the plaintiff's <u>pro</u> <u>se</u> complaint, which ran fifty-three pages, and was followed by a volume of exhibits, motion papers, requests and <u>ex</u> <u>parte</u> communication was in violation of the Rule 8(a) pleading requirements); <u>see</u> <u>also</u> <u>Levine v. County of Westchester</u>, 828 F. Supp. 238, 241 (S.D.N.Y. 1993) (holding that the plaintiff's third amended complaint, which contained only conclusory, vague and general factual allegations, which provided the Court with no adequate basis to discern the nature of the plaintiff's claims is an incomprehensible document and should, therefore, be dismissed for violating the Rule 8 pleading requirements); <u>and</u> <u>Sleigh v. Charlex, Inc.</u>, No. 03 Civ. 1369, 2004 WL 2126742, at *8 (S.D.N.Y. Sept. 14, 2004) (finding that the plaintiff's complaint, which spanned more than 175 pages and read more like a novel than a legal document blatantly violated Rule 8(a)).

In <u>Salahuddin v. Cuomo</u>, the plaintiff's complaint, which alleged deprivation of his rights while he was a NYS prisoner, spanned fifteen single-spaced pages, contained descriptions of twenty-odd defendants and a surfeit of detail. <u>Salahuddin</u>, 861

F.2d at 43.  The Second Circuit, as a result, found that the complaint was a violation of Rule 8's "short and plain statement" requirement, despite the fact that the plaintiff's complaint was neither vague nor incomprehensible and clearly pled some claims that could not be termed frivolous on their face.  Id.  It has already been recognized that plaintiff's fourth amended complaint fails to conform to the spirit of Rule 8.  Instead, it is a forty-three-page grammatical nightmare, which fails to place the defendants on notice of plaintiff's accusations.  It forces the defendants to parse through dozens of pages of irrelevant, rambling and delusional allegations that do not remotely resemble a "short and plain statement," as required by the Federal Rules. While plaintiff is proceeding pro se, and his complaint should be held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 594, 30 L.Ed.2d 652 (1972), at the same time, a plaintiff's pro se status does not excuse his failure to satisfy the minimal requirements of Rule 8(a).  See Salahuddin, 862 F.2d at 42.  It is because plaintiff has failed to satisfy the minimal requirements of the Federal Rules that the defendants' motion to dismiss the complaint for failure to comply with the Rule 8 requirements is granted.

**Leave to Amend**

Even if plaintiff's complaint were not dismissed for violating the pleading requirements of Rule 8, plaintiff's complaint should still be dismissed for failing to state a proper claim under either § 1983 or the ADA.  Thus, the NYC defendants also argue that plaintiff should be denied leave to amend, because any further amendment would be futile.  Fed. R. Civ. P. 15(a) states that leave to amend "shall be freely given when justice so requires."  When a district court "dismisses [a] complaint for failure to comply with Rule 8, it should generally give the plaintiff leave to amend."  Simmons, 49 F.3d at 86-7.  The district court has discretion over whether or not to grant leave to amend.  See Salahuddin, 862 F.2d at 42.  However, in exercising its discretion, the court must observe the direction provided for in Rule 15(a), to allow leave to amend "when justice so requires," because there is a jurisprudential preference for adjudicating cases on their merits rather than on the basis of certain formalities.  See id.  It has been found to be an abuse of discretion to deny leave to amend when dismissing a non-frivolous complaint simply because it does not constitute a "short and plain statement" as required by Rule 8.  Salahuddin,

28

862 F.2d at 42.  Courts may properly deny leave to amend where there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  Therefore, the court has power to dismiss "a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible." Salahuddin, 862 F.2d at 42.

Applying these principles to the instant case plaintiff's claim is dismissed without leave to amend.  First, plaintiff has already been given more than enough opportunities to amend his complaint.  Following the Second Circuit mandate, plaintiff has been involved in five conferences with Judge Go discussing how an amended complaint should appear, and yet plaintiff continued to file three additional amended complaints, each of which contained the same rambling narrative and completely disregarded any and all instruction given to plaintiff during these numerous conferences.  See Denny v. Barber, 576 F.2d 465, 471 (2d Cir. 1971) (where plaintiff is on notice of deficiencies in complaint at time of first amendment, it is not entitled to a "third go-

around."); see also Iwachiw v. NYC Bd. of Elections, 273 F. Supp. 2d 224, 227 (E.D.N.Y. 2003) (finding that because the Court has given the plaintiff an opportunity to amend his complaint, and he has again failed to comply with Rule 8, the amended complaint is dismissed with prejudice).

Turning to the question of whether justice would require granting leave to amend yet again, even if plaintiff's noncompliance with Rule 8 were overlooked, and his complaint evaluated on the merits, plaintiff has failed to state a cognizable claim of inadequate medical treatment pursuant to § 1983. The complaint of a pro se plaintiff, as already discussed, should be liberally construed in his favor. See Haines, 404 U.S. 519. Reasonable allowances must be made so that a pro se litigant does not forfeit rights by virtue of his lack of legal training. Therefore, the allegations that the plaintiff makes in his complaint "must be taken as true in considering whether a claim is stated." Salahuddin, 862 F.2d at 42-43 (citing Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)). In addition, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Salahuddin, 862

F.2d at 43 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d. 80 (1957)).

The Supreme Court has held that the government is obligated to provide medical care for those whom it is punishing by incarceration. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, in order to "state a cognizable claim, [under § 1983], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." This "deliberate indifference" standard contains both an objective and subjective prong. <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996). Objectively, the alleged deprivation must be "sufficiently serious," meaning that "a condition of urgency, one that may produce death, degeneration or extreme pain exists." <u>Hathaway</u>, 99 F.3d at 553. Subjectively, the official who is being accused must have acted with a sufficiently culpable mental state. <u>Id</u>. The individual being accused of deliberate indifference must both know of and disregard the excessive risk to the health and safety of the prisoner. <u>Id</u>. Therefore, mere allegations of negligence do not state a claim of deliberate indifference. <u>Id</u>. In other words, a prisoner must establish that prison officials intentionally denied or delayed access to medical care. <u>See</u> <u>Burgess v. Goord</u>, No. 98 Civ. 2077, 1999 WL 33458, at *4 (S.D.N.Y. Jan. 26, 1999)

(where plaintiff alleged that defendants were aware of his pain shortly after they took his cane away, and nonetheless refused to return his cane, the plaintiff has adequately stated a claim that defendants acted with deliberate indifference to his serious medical needs), see also Thomas v. Coombe, No. 95 Civ. 10342, 1998 WL 391143, at *4 (S.D.N.Y. July 13, 1998) (motion to dismiss denied where plaintiff informed prison guards of her medical condition and that she was in extreme pain).

Throughout the fourth amended complaint, plaintiff reiterates that he was "deprived of his Life Saving medicine," but he never states any facts in support of these allegations. Plaintiff never claims that he requested his medicine or informed any of the defendants that he was in pain. Plaintiff does not allege that he appeared to be ill or that any of the defendants were even aware of his alleged condition and purposely deprived him of his "life saving medicine." Instead, plaintiff claims that (1) he was strip searched; (2) his "confirmation and medical records, [were] [] thrown in the nearest Garbage can"; (3) his medicine was confiscated, for which he received a receipt; (4) the receipt he was given was thrown into the trash; (5) he was "continually derided when he asked for Medical Aid;" and (6) his medical aid was delayed. As a result, plaintiff claims that he suffered three heart attacks, and that he was taken to

32

Long Island College Hospital and to Belleview Hospital.  After

plaintiff's release from Belleview Hospital, he claims to have

suffered a fourth heart attack[5], and claims that the "police" did

not allow him to go to the hospital.  He was, instead, treated by

a nurse, who he claims saved his life by giving him a bottle of

"water pills."

While plaintiff alleges that certain unidentified

individuals disposed of his "confirmation and medical letters,"

he never claims these persons were aware of the substance of

these letters or that they denied him medical treatment as a

result of these alleged actions.  In fact, not once in his

complaint does plaintiff ever point to specific facts suggesting

that those unnamed persons involved either knew of plaintiff's

---

[5] In theory, even seemingly bizarre factual allegations in
the complaint must be accepted as true.  11 James WM. Moore et
al., Moore's Federal Pratice, § 56.30 (3d Ed. 2005). In practice,
however, courts sometimes deem factual allegations in a complaint
so outlandish that the court may disregard them. Id. For example,
it seems far-fetched that plaintiff suffered and survived four
heart attacks in a span of less than two weeks.  It is also
difficult to understand how plaintiff, who is not a doctor and
during his alleged fourth heart attack was not taken to the
hospital, could have diagnosed himself as having had a heart
attack.  Even more difficult to believe is that a hospital would
have so quickly released plaintiff after even suffering one heart
attack, let alone three.  See, e.g., Nieman v. Long, 31 F. Supp.
30, 30 (E.D. Pa. 1939) (if complaint's allegations allege facts
at odds with demonstrable truth, court need not accept the
allegations as true nor need court accept as true "pleadings
which any reasonable person knows cannot be possibly true").

condition or deliberately and purposefully denied plaintiff his medication or medical treatment. Instead, it appears from plaintiff's fourth amended complaint that he was taken to two different hospitals on at least three separate occasions, and that he was treated by a nurse on the fourth occasion. Because plaintiff does not contend that the persons involved, whoever they may be, deliberately or callously ignored his requests for medical treatment, but instead, points to specific facts that the defendants did everything in their power to provide medical treatment for plaintiff, and succeeded in saving his life, he has failed to satisfy the subjective element of the "deliberate indifference" standard. Instead, he appears to be alleging that the defendants were negligent in not properly and promptly providing him with medical care by doing things like sending him to a nurse instead of the hospital. As already stated, deliberate indifference "entails something more than mere negligence." Hathaway, 99 F.3d at 553. Otherwise, § 1983 claims would simply "duplicate state tort law at the federal level." Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 436 (S.D.N.Y. 2004) (citing Washington v. District of Columbia, 802 F.2d 1478, 1480 (D.C. Cir. 1986)). Therefore, plaintiff has not properly pled a § 1983 claim for failure to provided adequate medical treatment.

Finally, plaintiff has also failed to state a valid claim under the ADA. The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to state a valid claim under the ADA, a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he is being excluded from participation in, or being denied the benefits of some service, program or activity by reason of his disability; and (3) the entity which provides the service, program or activity is a public entity. Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003).

When an ADA claim does not state that a prisoner plaintiff was excluded from a prison service or program because of his disability, the complaint must be dismissed. See Goord, 1999 WL 33458, at *6 (dismissing ADA claim where prisoner did not allege that he was prevented from using recreation yard or attending religious services because of his severe difficulty walking on stairs); see also Devivo v. Butler, No. 97 Civ. 7919, 1998 WL 788787, at *4 (S.D.N.Y. Nov. 10, 1998) (dismissing ADA claim where blind inmate failed to allege that he was denied services in prison because he was blind). One ADA claim that plaintiff

35

appears to be making against the City defendants is for their failure to provide certain amenities in his cell, such as "towels, bed sheets, pillow, pillow cases, [and] blankets." Plaintiff, however, fails to allege sufficient facts in his fourth amended complaint that there were programs or services from which he was excluded because of his disability. Plaintiff simply makes conclusory allegations that his rights under the ADA were violated. The purpose of the ADA is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." Atkins, 251 F. Supp. 2d at 1232 (citing Doe v. Pfrommer, 148 F.3d 73, 82 (2d. Cir. 1998)). Where, as with plaintiff's fourth amended complaint, there is no allegation of disparate treatment, no claim for discrimination under the ADA lies. It is not clear what plaintiff meant when he alleged in his complaint that "[w]hen asked about said amenities, he was laughingly told they were always available, but only on an 'exchange basis', and since he had nothing to exchange, he could not receive anything." However, even assuming that plaintiff is alleging that the unnamed defendants were providing "amenities" to prisoners who were giving them something in return, plaintiff still fails to allege an ADA violation because the discrimination has nothing to do with plaintiff's alleged disability.

Another claim that plaintiff makes under the ADA is that he was "forced to walk and climb steps to a cell, and was then forced to stand [from 8 AM] till 4 PM." Fourth Am. Compl. at 15. Plaintiff further alleges that he is not supposed to stand for more than one hour per day and as a result of his treatment and his water retention problem, his legs became swollen and numb, and he could barely stand. Id. According to 42 U.S.C § 12182(b)(2)(A)(ii), "discrimination includes a failure to make reasonable modifications." 42 U.S.C. § 12182(b)(2)(A)(ii). Assuming that plaintiff's mobility and water retention problems are disabilities covered under the ADA, and that plaintiff is arguing that the City defendants have failed to properly accommodate his disabilities as required by the ADA, the plaintiff still fails to make a claim under the Act. 42 U.S.C. § 12182(b)(2)(A)(ii) "require[s] a person with a disability to request a reasonable and necessary modification, thereby informing the operator of a public accommodation about the disability." Dudley v. Hannaford Bros. Co., 333 F.3d 299, 309 (1st Cir. 2003). Even assuming that a prison is a "public accommodation" for purposes of § 12182, nowhere in his fourth amended complaint does plaintiff allege that the defendants were aware of his disability or that he informed them of his disability or requested reasonable accommodations for his

37

disability.  Without either requesting a reasonable accommodation or informing the defendants that he suffered from a disability which required a reasonable accommodation, defendants could not have violated the ADA, as they are not mind readers.  As a result, plaintiff has failed to properly allege a claim under the ADA against the City defendants.

### Conclusion

Accordingly, defendants' motion to dismiss is granted for plaintiff's continued violation of the Rule 8 pleading requirements and this action is dismissed without leave to replead.  The Clerk of the Court is directed to close the case.


Dated:     Brooklyn, New York
           July 14, 2005

                              SO ORDERED:


                              ____/s/_____
                              David G. Trager
                              United States District Judge